UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN  DIVISION

──────

DERRICK LEE SMITH,

                    Plaintiff,                    Case No. 1:15-cv-42

v.                                      Honorable Janet T. Neff

UNKNOWN WEERS et al.,

                    Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Claims 2, 7-9 and 11-18.  The Court also will dismiss Defendants MDOC, Beckwith, Friend, Borst and Meacell.  The Court will serve Claims 1, 3-6 and 10 against Defendants Hoffner, Winsley, Weers and Tomkins.

<u>Factual Allegations</u>

Plaintiff Derrick Lee Smith presently is incarcerated in the Kinross Correctional Facility, but the events giving rise to his complaint arose at the Lakeland Correctional Facility (LCF).  In his *pro se* amended complaint (ECF No. 32), Plaintiff sues the Michigan Department of Corrections (MDOC) and the following LCF employees:  Warden Bonita Hoffner; Corrections Officers (Unknown) Borst, (Unknown) Meacell, (Unknown) Weers  and (Unknown) Friend; Prisoner Counselor/Assistant Resident Unit Supervisor Donald Winsley; and Prison Chaplain (Unknown) Tomkins.[1]

The 78-page amended complaint includes eighteen enumerated "Statements of Claim," each of which is directed at a particular Defendant(s) or individual(s).[2]  Additional facts will be provided below as to each of Plaintiff's claims.

<u>**Discussion**</u>

I.      <u>Immunity</u>

Plaintiff brings Claim 18 against the MDOC.  Plaintiff may not maintain a § 1983 action against the MDOC.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by

---

[1] In the amended complaint, the Plaintiffs include Derrick Lee Smith, as well as eight other prisoners and eleven non-prisoners who appear to be family members of the named prisoners.  Plaintiff Smith, however, is the only person who signed the amended complaint.  Plaintiff lacks standing to assert the constitutional rights of other prisoners. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992).  As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978).  Consequently, Plaintiff Derrick Lee Smith is the only Plaintiff of record in the instant action.

[2] Plaintiff asserts claims against several individuals who are not named as Defendants in the amended complaint.

statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment.  *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000).  In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).  Therefore, the MDOC must be dismissed.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.      **Claims 1, 3-6: Defendants Hoffner, Winsley, Weers and Tomkins**

Plaintiff contends that Defendants Hoffner, Winsley, Weers and Tomkins transferred him to the Alger Correctional Facility in retaliation for filing lawsuits. In Claim 1 against Defendant Hoffner, Plaintiff alleges that Hoffner approved his transfer from LCF to the Alger Correctional Facility on February 9, 2015, in retaliation for Plaintiff's federal lawsuits against her and for seeking judicial review of his misconduct convictions in the state courts. Plaintiff asserts that Hoffner intended to punish him by transferring him to the Upper Peninsula, where his fiance and family would be unable to visit him.

-4-

In Claim 3 against Defendant Winsley, Plaintiff claims that a Notice of Intent was issued to conduct an administrative hearing because Plaintiff impermissibly used the telephone while on "top lock" restriction.[3]  Following an administrative hearing, Plaintiff was found to have violated top lock and a 30-day phone restriction was imposed.  The decision was upheld by Defendant Winsley.  Plaintiff alleges that he sought judicial review of the decision.  On February 3, 2015, Defendant Winsley allegedly told Plaintiff that he was going to be transferred to the Upper Peninsula because Plaintiff "'had the nerve' to take Mr. Winsley to court on the upholding of the NOI for the 30 day telephone restriction . . . ."  (Am. Compl., ECF No. 32, PageID #136.)

Plaintiff alleges in Claim 4 that on February 9, 2015, Defendant Weers told him that he was being transferred to another facility where he would not be able to see his "woman visitor" because Plaintiff had filed federal lawsuits against Weers and other prison officials.  (Amend. Compl., ECF No. 32, PageID #139.)

In Claim 5 against Defendant Tomkins, Plaintiff alleges that he was transferred to a facility in the Upper Peninsula in order to prevent his wedding, which was scheduled to be held at LCF on February 16, 2015.  Plaintiff contends that the transfer was "clearly done to interfere and cause the breakdown in the relationship that Plaintiff had with then bride Sherri Slaight and it was only done because the Plaintiff and his bride are an inter-racial couple."  (Amend. Compl., ECF No. 32, PageID #141.)  Plaintiff contends that the reasons given for his transfer existed for many months

---

[3]A prisoner on toplock is restricted to his/her own cell, room, or bunk and bunk area. For purposes of this section, "bunk area" is defined as the prisoner's bunk and the floor area next to the prisoner's bunk which extends to the mid-point between the adjacent bunks on all sides. If a prisoner is housed in a multiple occupancy cell or room, toplock may consist of placement in a cell/room which is designated as a toplock cell/room. If placed in such a cell/room, the prisoner shall be given the same access to his/her property which would be provided if housed in his/her own cell/room and shall be treated in all other respects as being on toplock.  MDOC Policy Directive 03.03.105(MMM) (eff. Apr. 9, 2014).

before his transfer, yet he was transferred a week before his wedding date.   Plaintiff asserts violations of his First Amendment right to freedom of association, Eighth Amendment right against cruel and unusual punishment and Fourteenth Amendment right to equal protection.

Plaintiff further alleges in Claim 6 that on December 11, 2014, Defendant Winsley told him that if he pursued his federal lawsuit against Officer Alford[4], he would have Plaintiff transferred so that he could not get married at LCF as scheduled.   Winsley allegedly told Plaintiff that he would be transferred to the Alger Correctional Facility in the Upper Peninsula, and that after 4 to 6 months, he would be transferred to the Kinross Correctional Facility or the Chippewa Correctional Facility.   According to Plaintiff, Winsley stated that there were officers at those facilities who owed him favors that he would direct to write false misconducts against Plaintiff and inflict "immediate physical harm to [Plaintiff's] person, body and other injury . . ."   (Amend. Compl., ECF No. 32, PageID #146.)

At this stage of the proceedings, the Court finds that the allegations set forth in Claims 1 and 3 through 6 are sufficient to state one or more claims against Defendants Hoffner, Winsley, Weers and Tomkins.

B.    **Claim 2: Defendant Borst**

Plaintiff alleges that Defendant Borst issued major conduct tickets against him and three other prisoners for receiving money from a prohibited source as set forth in Policy Directive 04.02.105 (Prisoner Funds).   According to Plaintiff, the money was sent by Plaintiff's friend, George Preston.   The money was returned to Preston as required by policy.   Plaintiff alleges that the proper procedure was for Borst to prepare a Notice of Intent (NOI) regarding the J-pay transaction.

---

[4]Plaintiff currently has a civil rights action against Defendant Alford pending in this Court.  *See Smith v. Alford* et al., 1:13-cv-694 (W.D. Mich.).

However, instead of issuing an NOI, Borst allegedly exceeded her authority by issuing Plaintiff a misconduct ticket.  As a result of the misconduct conviction, Plaintiff was subjected to loss of privileges, during which time he could not talk to his family on the phone or go to the yard for recreation.[5]  Plaintiff asserts violations of his First, Eighth and Fourteenth Amendment rights.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest.  In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior.  The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.  But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior.  Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest."  But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

---

[5]The following privileges are lost by a prisoner as a result of a "loss of privileges" sanction: day room, activity room, TV room, study room, or other designated area where similar activities occur; exercise facilities, such as yard, gym, and weight room/pit; group meetings, except primary religious worship service and group therapy; out-of-cell hobbycraft activities; kitchen area; direct access to general library; movies; music practice and musical instruments; radio, tape player, television and portable media player; leisure time activities; telephone, except calls to the Office of Legislative Corrections Ombudsman and to return calls from an attorney; visiting (this applies only if hearing officer identified in the hearing report that the misconduct occurred in connection with a visit, and only with the visitor named in the hearing report); use of kiosk (e.g., to send/receive electronic messages or retrieve account information).  MDOC Policy Directive 03.03.105, Attachment E (eff. Apr. 9, 2014).

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he.[6]  The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[7] for prisoners convicted of crimes occurring after April 1, 1987.  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence.  Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  *Id.* at 440.  Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.  355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011);  *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 17591 (Jan. 4, 2011).  In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits.  *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a

---

[6]Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts.  The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct.  *See* Policy Directive 03.03.105, ¶ AAAA (eff. Apr. 9, 2014).

[7]For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  MICH. COMP. LAWS § 800.33(5).

significant, atypical deprivation.  *See Sandin v. Connor*, 515 U.S. 472 (1995).  Plaintiff suggests that the restrictions associated with his loss of privileges constituted the type of deprivation that would give rise to due process protections.  However, the temporary loss of privileges does not amount to a significant, aytipical hardship under *Sandin*.  *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Johnson v. Vroman*, No. 1:06-cv-145, 2006 WL 1050497, at *2 (W.D. Mich. Apr. 19, 2006).  Plaintiff, therefore, fails to state a due process claim arising from his major misconduct conviction.

Plaintiff also fails to state a claim for violation of his First Amendment rights. Though "federal court opinions have previously held that persons incarcerated in penal institutions retain their First Amendment rights to communicate with family and friends, . . . [n]evertheless, an inmate has no right to unlimited telephone use." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994).  Moreover, the institution may place limits on communication and/or visitation if such limits are necessary to meet legitimate penological objectives, such as rehabilitation and the maintenance of security and order.  *See Overton v. Bazzetta*, 539 U.S. 126 (2003) (withdrawing visitation privileges for a period of time to effect prison discipline is not a dramatic departure from accepted standards for conditions of confinement).

When a prison regulation or practice impinges on inmates' speech and association rights, the regulation is valid if it is reasonably related to legitimate penological interests.  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of

exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89-90.

Here, Plaintiff has not asserted any facts tending to show that the temporary restrictions on his visitation and telephone privileges are not related to legitimate penological interests, i.e., discipline for violation prison rules. Moreover, in light of his alternative means of communication, namely written correspondence, these temporary sanctions imposed as legitimate sanctions in response to a disciplinary proceeding do not violate Plaintiff's First Amendment association rights.

Finally, Plaintiff fails to state an Eighth Amendment claim arising from his misconduct conviction. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant

-10-

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

A temporary loss of privileges does not rise to the level of an Eighth Amendment violation. Plaintiff's loss of privileges was no more restrictive than placement in administrative segregation. The Supreme Court has held that placement in administrative segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). The Sixth Circuit also has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *8 (6th Cir. Aug. 23, 2000); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug. 11, 1999). Although it is clear that Plaintiff was temporarily denied certain privileges, he does not allege that he was denied basic human needs. Plaintiff, therefore, fails to state an Eighth Amendment claim.

C.      **Claims 7-10:  Defendants Meacell, Borst, Beckwith and Hoffner**

In Claim 7, Plaintiff alleges that Defendant Meacell issued a Class II (minor) misconduct ticket against Plaintiff for allegedly allowing Prisoner Greer to use his prisoner identification card for the purpose of deceiving prison staff so that Greer could get a second meal tray. Plaintiff was charged with being an accomplice to the possession of forged documents and possession of stolen property. Plaintiff maintains that he lost his identification card and that Greer pleaded guilty to finding and using the card without Plaintiff's knowledge. Plaintiff asserts in Claim 8 that Defendant Borst found Plaintiff guilty of the offense and Plaintiff was sanctioned with three

-11-

days loss of privileges.  Plaintiff further alleges in Claim 9 that Defendant Beckwith upheld the conviction.  Plaintiff asserts violations of his Eighth and Fourteenth Amendment rights arising from the misconduct conviction.  In addition, Plaintiff claims that, as a result of the misconduct conviction, he was denied telephone and yard privileges in violation of his First Amendment right of association.  In Claim 10 against Defendant Hoffner, Plaintiff alleges that he sought judicial review of the misconduct conviction in the Branch County Circuit Court, but that his case was dismissed by the Court for lack of subject matter jurisdiction after he was transferred to a prison in the Upper Peninsula.  Plaintiff contends that Defendant Hoffner transferred him to prevent him from getting a fair review of his misconduct conviction in the state court.

As previously discussed, a prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *See Sandin*, 515 U.S. at 486-87.  The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process.  *See, e.g., Ingram*, 94 F. App'x at 273; *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff lost no good-time as the result of his Class II misconduct conviction; therefore, he fails to state a due process claim.  Moreover, for the reasons discussed above, Plaintiff cannot establish a violation of his First or Eighth Amendment rights resulting from 3 days loss of privileges.

At this stage of the proceedings, Plaintiff's allegations are sufficient to warrant service of Claim 10 against Defendant Hoffner.

D.      **Claim 11: Deputy Warden Beckwith**

Plaintiff claims that Defendant Beckwith denied his request for participation in the "dog program" at LCF, stating, "you are serving for the crime of felony murder, and we do not want you to kill the dog."  (Amend. Compl., ECF No. 32, Page ID #141.)  Plaintiff filed a grievance claiming that he was never charged or convicted of murder.[8]  Even if he had, Plaintiff contends that other prisoners convicted of murder have been allowed to participate in the dog program.  Plaintiff contends that Beckwith's conduct violated his Eighth Amendment rights, as well as his Fourteenth Amendment due process and equal protection rights.

Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment.  *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey*, 832 F.2d at 955 ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services).  Because Plaintiff has no liberty interest in

---

[8]According to the MDOC Offender Tracking and Information System (OTIS), Plaintiff is serving sentences for six counts of first-degree criminal sexual conduct (CSC), two counts of third-degree CSC and two counts of kidnapping. *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=267009.

rehabilitative programs, Defendant Beckwith's conduct did not violate his due process rights. Likewise, Defendant Beckwith's denial of Plaintiff's request to participate in the program is not the type of extreme deprivation that would implicate the Eighth Amendment. *Rhodes*, 452 U.S. at 347; *see also Wilson*, 148 F.3d at 600-01.

Plaintiff also alleges that Defendant Beckwith denied him equal protection when she rejected his request for participation in the dog program on the ground that Plaintiff committed murder when he was not convicted of such an offense and other prisoners convicted of murder were allowed in the program. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, the Court previously has held that no fundamental right was implicated by Defendants' alleged conduct.

Plaintiff's claim therefore is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate

"intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's allegation of discriminatory treatment is conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff fails to allege sufficient facts to support a claim of intentional discrimination by either direct or indirect evidence. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination). First, Plaintiff alleges no facts constituting direct evidence of discriminatory motive or purpose. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)); *see also Davis*, 679 F.3d at 440. Second, Plaintiff fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), because he fails to allege that the prisoners participating in the dog program were similarly situated in all relevant respects. *See Umani*, 432 F. App'x at 458. To be a similarly-situated person member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998). Here, Plaintiff has failed to identify the prisoners who were permitted to participate in the dog program, let alone that they were similarly situated in all relevant respects. Plaintiff therefore fails to state an equal protection claim.

-15-

E.      **Claim 12:  ARUS Daniels, ARUS Morello and Officer Cancel**

Plaintiff includes a "Statement of Claim" against ARUS Daniels, ARUS Morello and Officer Cancel, but they are not listed as Defendants in the caption or in the parties section of the form complaint. Even if they were, Plaintiff fails to state a claim against them. Plaintiff alleges that on February 5, 2015, Plaintiff was instructed to go to the food service building while his housing unit was being searched. Before he left, Plaintiff's Amp'd MP3, Amp'd MP3 adapter, Geneva Watch and Sony radio/tape player were secured in his unit locker. When Plaintiff returned, he found those items damaged or missing. Plaintiff seeks reimbursement for his damaged or missing property.

As an initial matter, Plaintiff does not make any specific factual allegations against ARUS Daniels, ARUS Morello and Officer Cancel. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their

-16-

involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991).

Assuming Plaintiff contends that ARUS Daniels, ARUS Morello and Officer Cancel are responsible for his damaged or missing property, his due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."  *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the

institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013).  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Claim 12 will be dismissed.

F.      **Claim 13: Defendant Winsley**

Claim 13 against Defendant Winsley relates to the 30-day telephone restriction that was imposed upon Plaintiff for making a telephone call while on top lock restriction.  Defendant Winsley upheld the restriction.  Plaintiff alleges that during the appeal process, Defendant Winsley indicated that Plaintiff used the phone on January 13, 2014.  According to Plaintiff, the date was incorrect because Plaintiff did not arrive at the facility until June 2014, but Winlsley refused Plaintiff's request to correct the error.  Plaintiff contends that Winlsey "wanted to place [him] on punishment and enforce a hearing and guilty finding that is based on a date that is a lie . . . ." in violation of Plaintiff's Eighth and Fourteenth Amendment rights.  As set forth above, a temporary telephone restriction imposed as a legitimate sanction in response to a disciplinary proceeding does not violate Plaintiff's First Amendment rights.  *See Turner*, 482 U.S. at 89.  Likewise, the 30-day telephone restriction resulting from the misconduct conviction is not the type of extreme condition

that would implicate the Eighth Amendment protection against cruel and unusual punishment. *See Rhodes*, 452 U.S. at 348.

### G.  **Claims 14-16: Taggett, Defendants Friend and Weers**

In Claims 14-16, Plaintiff makes identical allegations against Taggett and Defendants Friend and Weers.[9]   Plaintiff claims that Defendants were assigned as hearing investigators in connection with five major misconduct charges against him, but they never provided Plaintiff with the benefits of a hearing investigation in violation of Plaintiff's due process rights.  For example, Plaintiff alleges that he was never given the opportunity to offer evidence in support of his defense in advance of the misconduct hearings.  However, as set forth above, Plaintiff cannot state a due process claim arising from his major misconduct convictions.  Plaintiff does not make any other allegations against Defendant Friend; therefore, Defendant Friend will be dismissed from the action for failure to state a claim.

### H.  **Claim 17: Defendant Winsley**

Plaintiff alleges that he filed an action in the Wayne County Circuit Court for purposes of legally changing his name and paid the filing fee.  Plaintiff prepared the necessary documents and submitted them to Defendant Winsley for mailing to the state court.  According to Plaintiff, Winsley failed to mail the documents, which resulted in his case being dismissed without prejudice.  Plaintiff contends that Winsley's conduct violated his First Amendment right of access to the courts.

---

[9](Unknown) Taggett was not listed as a Defendant in the amended complaint.  Even if he was included as a Defendant, Plaintiff fails to state a claim against Taggett for the same reason he fails to state a claim against Defendant Friend.

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Plaintiff's claim concerns legal proceedings to change his name, which is not a type of legal action protected by his right of access to the courts.  Consequently, Plaintiff fails to state a First Amendment claim against Defendant Winsley.

## **<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Claims 2, 7-9 and 11-18 will be dismissed on immunity grounds or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court also will dismiss Defendants MDOC, Beckwith, Friend, Borst and Meacell.  The Court will serve Claims 1, 3-6 and 10 against Defendants Hoffner, Winsley, Weers and Tomkins.

An Order consistent with this Opinion will be entered.


Dated:  November 4, 2015          /s/ Janet T. Neff
                                 Janet T. Neff
                                 United States District Judge