UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK LEE SMITH,

        Plaintiff,                        Hon. Janet T. Neff

v.                                             Case No. 1:15-cv-42

UNKNOWN WEERS, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on Defendants' Motion for Summary Judgment, (ECF No. 101), and Plaintiff's Motion for Summary Judgment, (ECF No. 110). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted**, Plaintiff's motion **denied**, and this matter terminated.

## BACKGROUND

        In his 78-page amended complaint, Plaintiff asserts numerous claims against the Michigan Department of Corrections (MDOC) and several individuals employed at the Lakeland Correctional Facility (LCF). (ECF No. 32). Most of Plaintiff's claims were dismissed on screening, but still remaining in this matter are claims of unlawful retaliation asserted against Defendants Hoffner, Winsley, Weers, and Tomkins who now move for summary judgment. Plaintiff also moves for summary judgment.

## LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility considerations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In

sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, the plaintiff on a claim for relief or the defendant on an affirmative defense, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.**     **Plaintiff's Motion for Summary Judgemnt**

For Plaintiff to obtain summary judgment on his claims he must present evidence such that "no reasonable trier of fact" could find for Defendants. In support of his motion for summary judgment, Plaintiff does not submit or reference any evidence which would entitle him to relief. Instead, Plaintiff argues that the evidence of record reveals "that there is a real disagreement about the facts that are important in this case." (ECF No. 110 at PageID.668). Plaintiff later reiterates that because he "has

shown that there is a genuine issues (sic), and disagreement over the material fact" he is entitled to summary judgment. (ECF No. 110 at PageID.669). Finally, Plaintiff concludes his motion by asserting that "there is a genuine issue of material fact and that summary judgment should be entered in favor of the plaintiff, and this matter allowed to proceed to jury trial." (ECF No. 110 at PageID.669). Plaintiff clearly misunderstands the concept of summary judgment and what must be demonstrated to obtain such. Because Plaintiff has failed to demonstrate that there exists "no genuine dispute as to any material fact," the undersigned recommends that Plaintiff's motion for summary judgment be denied.

### II.        Defendants' Motion for Summary Judgment

#### A.        Retaliation Standard

Plaintiff's remaining claims all concern allegations of unlawful retaliation. The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

In the context of a First Amendment retaliation claim, a prisoner is "expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Department of Corrections*, 196 Fed. Appx. 350, 358 (6th Cir., Aug. 22, 2006) (citations omitted). Generally speaking, a transfer of a prisoner from one facility to another "does not constitute an adverse action since a transfer is merely an ordinary incident of prison

life." *Jones v. Caruso*, 421 Fed. Appx. 550, 553 (6th Cir., Apr. 28, 2011) (citation omitted). The Sixth Circuit has recognized an exception to this general rule "for cases in which foreseeable, negative consequences 'inextricably follow' from the transfer" such as an impairment of the prisoner's ability to access the courts. *Id.* (citation omitted). However, a transfer to "a less desirable prison which was more restrictive" or which places the prisoner "further away from his family" are not sufficiently adverse consequences to deter a person of ordinary firmness from engaging in constitutionally protected conduct. *See, e.g., Espree v. Burt*, 2016 WL 820943 at *4 (W.D. Mich., Feb. 12, 2016) (citations omitted); *see also, Henley v. Miller*, No. 13-1501 (6th Cir., Mar. 27, 2014) (in rejecting a prisoner's retaliation claim, the court observed that "Henley's claims that his transfer has resulted in a hindered ability to call family and friends, an inability to continue his education, less money for discretionary spending, and uncomfortable sleeping arrangements, even if true, do not constitute 'foreseeable consequences that inhibited [his] ability to access the courts'"); *Hudson v. Wade*, No. 12-2465 (6th Cir., Mar. 5, 2014) (in rejecting a prisoner's retaliation claim, the court observed that transfer to a facility "with 'less law library access,' [which] 'houses mentally ill prisoners,' has a 'documented racist history,' requires prisoners to make telephone calls outside in cold weather, has a policy of elevating 'minor rule violations' to 'major misconduct reports,' hinders his ability to visit his family because of its location, and does not offer the same education programs. . .[constitutes] the *de minimis* discomforts 'that prisoners are expected to endure'").

### B.     Defendant Tomkins

In Count #5 of his amended complaint, Plaintiff alleges that Defendant Tomkins ordered that Plaintiff be transferred from the Lakeland Correctional Facility to a facility in the Upper Peninsula of Michigan "in order to prevent his wedding." (ECF No. 32 at PageID.141).

As previously noted, transfer from one facility to another is merely one of "the *de minimis* discomforts 'that prisoners are expected to endure.'" Thus, Plaintiff's transfer is not a sufficiently adverse action to maintain a retaliation claim. The exception that the Sixth Circuit has recognized for transfers which can reasonably be expected to interfere with a prisoner's right of access to the courts does not apply to this circumstance. While Plaintiff invites the Court to recognize another such exception for "freedom of association," such fails to advance Plaintiff's position for at least two reasons. First, Plaintiff has failed to demonstrate that his transfer prevented him from associating with his then-fiancée. More significantly, because it was not clearly established at the time of the relevant events that a transfer which allegedly made it more difficult for a prisoner to maintain personal relationships constituted adverse action, Defendant Tomkins is entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Accordingly, the undersigned recommends that Defendant Tomkins is entitled to summary judgment.

### C.     Defendant Weers

In Count #4 of his amended complaint, Plaintiff alleges that Defendant Weers helped facilitate his transfer because Plaintiff had pursued legal action against Weers and other prison officials. (ECF No. 32 at PageID.139). Plaintiff alleges that as a result of his transfer he was unable to "meet with

family and friends" and was prevented from pursuing in federal court his legal claims against Defendant Weers and others. (ECF No. 32 at PageID.139).

As previously noted, the allegation that Plaintiff's transfer made it more difficult for Plaintiff to "meet with family and friends" is insufficient to maintain a retaliation claim. As for Plaintiff's claim that his transfer prevented him from pursuing legal claims against Defendant Weers, the result is the same. To fit within the aforementioned adverse action exception, Plaintiff must establish: (1) his transfer impeded his constitutional right of access to the courts and (2) that it was reasonably foreseeable, at the time of his transfer, that his transfer would impede his right of access to the courts. *See, e.g., Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005) (there exists an exception to the adverse action rule where a transfer interferes with the prisoner's right of access to the courts); *Jones*, 421 Fed. Appx. at 553 ("to survive summary judgment on his retaliation claim, Jones needed to 'make a sufficient showing. . .of the foreseeable, negative consequences that 'inextricably follow[ed]' from his transfer"). *Dye v. DeAngelo*, 2010 WL 4982925 at *6 (E.D. Mich., Nov. 4, 2010) ("*Siggers-El* made clear that to fall within the exception, the consequences of the transfer that limit access to the courts must have been reasonably foreseeable at the time of transfer").

The First Amendment right to access the courts extends only to "direct appeals, habeas corpus applications, and civil rights claims." *Thaddeus-X*, 175 F.3d at 391 (citing *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). To demonstrate a violation of this right, Plaintiff must establish that he suffered "actual injury" (i.e., prejudice) to a non-frivolous legal claim in one of these three categories. *See Brown v. Matauszak*, 2011 WL 285251 at *4 (6th Cir., Jan. 31, 2011) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) and *Casey*, 518 U.S. at 351). While Plaintiff alleges that his transfer prevented him from pursuing his legal claims against Defendant Weers and others, he has presented no

evidence demonstrating that he suffered any actual injury to his ability to pursue such claims or that such claims were not frivolous. Furthermore, even if the Court assumes Plaintiff did, in fact, suffer such an injury, Plaintiff has presented no evidence supporting the conclusion that such injury was reasonably foreseeable at the time of his transfer. Considering that prisoners are routinely able to pursue civil rights litigation in this Court despite being transferred throughout the MDOC, the Court is skeptical that Plaintiff could make such a showing. Accordingly, the undersigned recommends that Defendant Weers is entitled to summary judgment.

### D.     Defendant Winsley

Plaintiff asserts two claims against Defendant Winsley. In Count #3 of his amended complaint, Plaintiff alleges that Defendant Winsley secured Plaintiff's transfer because he was pursuing in state court an appeal of a prison misconduct conviction affirmed by Winsley on administrative appeal. (ECF No. 32 at PageID.136-37). In Count #6 of his amended complaint, Plaintiff alleges that Defendant Winsley threatened to have Plaintiff transferred if he continued to pursue his federal lawsuit against another MDOC employee. (ECF No. 32 at PageID.144-52). Plaintiff alleges that as a result of his transfer: (1) his state court claim challenging his misconduct conviction was dismissed and (2) he was unable to get married to his then-fiancée.

As noted above, the fact that Plaintiff's transfer may have made it more difficult to visit with friends and family does not constitute adverse action sufficient to maintain a retaliation claim. As for Plaintiff's state court challenge to his prison misconduct conviction, it does appear that such was dismissed by the Branch County Circuit Court, in part, because Plaintiff had been transferred to a facility in another county. (ECF No. 32-1 at PageID.246). However, because Plaintiff has failed to

demonstrate that this action was not frivolous, he cannot establish that such constitutes adverse action sufficient to maintain a retaliation claim. Furthermore, Defendant Winsley has submitted an affidavit in which he asserts that he "was not involved with the transfer of [Plaintiff] in any capacity." (ECF No. 102-8 at PageID.594). In response, Plaintiff has presented no evidence that Defendant Winsley was involved in his transfer or otherwise acted to secure or facilitate his transfer. In the absence of evidence that Defendant Winsley was in any way responsible for his transfer, Plaintiff cannot possibly maintain a claim that Winsley had him transferred for unlawful retaliatory reasons. Accordingly, the undersigned recommends that Defendant Winsley is entitled to summary judgment.

### E.     Defendant Hoffner

Plaintiff asserts two claims against Defendant Hoffner. In Count #10 of his amended complaint, Plaintiff alleges that Defendant Hoffner secured his transfer so as to prevent him from pursuing a state court appeal of a prison misconduct conviction. (ECF No. 32 at PageID.166-70). In Count #1 of his amended complaint, Plaintiff alleges that Defendant Hoffner had him transferred, so that his fiancée and family would be unable to visit him, in retaliation for filing a federal lawsuit against her and for challenging in state court certain prison misconduct convictions. (ECF No. 32 at PageID.125-26).

Again, that Plaintiff's transfer may have made it more difficult for his friends and family to visit does not constitute adverse action sufficient to maintain a retaliation claim. As for Plaintiff's claim that his transfer prevented him from pursuing a state court challenge to a prison misconduct conviction, Plaintiff has failed to demonstrate that his state court action was not frivolous. Absent such evidence, Plaintiff cannot establish that his right of access to the courts was impeded and, thus, he

cannot establish that he suffered an adverse action sufficient to maintain a retaliation claim. To the contrary, Plaintiff conceded in his deposition that he was, in fact, guilty of the prison misconduct conviction in question. (ECF No. 102-2 at PageID.537-40). Accordingly, the undersigned recommends that Defendant Hoffner is entitled to summary judgment.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (ECF No. 101), be **granted**; Plaintiff's Motion for Summary Judgment, (ECF No. 110), be **denied**; and this matter terminated. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: January 26, 2017

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge